**JOHN L. BURRIS, Esq. SBN 69888**
**ADANTÉ D. POINTER Esq. SBN 236229**
**MELISSA C. NOLD, Esq. SBN 301378**
**LAW OFFICES OF JOHN L. BURRIS**
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
john.burris@johnburrislaw.com
adante.pointer@johnburrislaw.com
melissa.nold@johnburrislaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN BURRELL, an individual; and MICHAEL WALTON, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF VALLEJO, a municipal corporation; ANDREW BIDOU, in his official capacity as Chief of Police; DAVID MCLAUGHLIN, individually and in his official capacity as Police Officer for the CITY OF VALLEJO; and DOES 1-50, individually and in their official capacities as Police Officers for the CITY OF VALLEJO, jointly and severally,<br><br>Defendants. | CASE NO.: 2:19-cv-01898-WBS-KJN<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>Honorable William B. Shubb<br><br>Date: April 6, 2020<br>Time: 1:30 p.m.<br>Ctrm: 5 |

## INTRODUCTION

On the afternoon of January 22, 2019, Plaintiff Adrian Burrell looked out his front window and saw his cousin, Plaintiff Michael Lawson, sitting on a motorcycle in his driveway. Defendant Vallejo Police Officer David McLaughlin was pointing a gun at Mr. Lawson's back and Mr. Lawson

1

was not aware of the officer's presence. Mr. Burrell stepped out onto his porch and notified Officer McLaughlin that Mr. Lawson could not hear him because he was wearing a helmet.

Mr. Burrell stayed on his porch and began exercising his First Amendment Right to videotape police activity from a safe distance of more than 33 feet away. Officer McLaughlin unlawfully demanded that Mr. Burrell go back in his house, in violation of Vallejo Police Department policies. When Mr. Burrell declined, Officer McLaughlin proceeded to turn his back on Mr. Lawson, run up onto Mr. Burrell's porch and violently attack him. Mr. Burrell and Lawson were handcuffed and placed in the back of a patrol car under arrest. Plaintiffs were ultimately released without charges after Mr. Burrell notified Officer McLaughlin that he was Marine veteran.  Mr. Burrell suffered a concussion and a shoulder injury. Both Plaintiffs suffered emotional distress as a result of this incident which drew international attention. Defendant Officer McLaughlin was never disciplined, retrained or counseled regarding this incident. Defendant City of Vallejo by and through its Chief of Police ratified his conduct.

Thereafter, Plaintiffs brought this action against Defendants alleging violations of the First Amendment, Fourth Amendment and attendant state law claims, arising out of this incident, which brought international shame and scrutiny on the Vallejo Police Department. Defendants incredulously move to dismiss Plaintiffs' Complaint based upon inapplicable case law and their mistaken belief that Plaintiffs randomly listed twenty-one (21) prior incidents of litigation against the City of Vallejo to demonstrate a pattern of permitting excessive force. However, as Plaintiffs' Complaint clearly states, the prior cases are listed for the purpose of demonstrating Vallejo Police Department, and *inter alia* the City of Vallejo's, awareness of this pattern of its Officers using excessive force and its ongoing failure to supervise, discipline and/or retrain the officers who engage in such conduct, as evidence of the City's deliberate indifference to its Officers' constitutionally violative conduct which is tantamount to a custom, policy or practice that is encouraged and ratified by the City.

2

Plaintiff's counsel is currently litigating four additional cases pending in the Eastern District, which allege identical *Monell* facts related to the City of Vallejo's pattern of failing to discipline their employees, failing to supervise their employees and subsequent ratification of officer misconduct and policy violations. (*McCoy v. City of Vallejo,* USEDC 2:19-cv-001191-JAM*; Thurston v. City of Vallejo,* USECD 2:19-cv-01902-KJM*; Jenkins v. City of Vallejo,* USEDC 2:19-cv-01896-TLN; and the matter at hand).

In the matter of *McCoy v. City of Vallejo*, the parties stipulated to stay the other three cases, including this one and allow the honorable Judge John A. Mendez to decide this identical *Monell* issue. (See Dkt. 9; USEDC 2:19-cv-01902-KJM, Dkt. 7; and USEDC 2:19-cv-01896-TLN, Dkt. 8). Judge Mendez rejected Defendants argument for dismissal of these identical *Monell* facts. (See USEDC 2:19-cv-001191-JAM, Dkt. 12) Nevertheless, Defendants opted for a second, third and fourth bite at the apple, and filed three more Motions to Dismiss these identical *Monell* allegations, wasting the limited resources of the court, taxpayer dollars and counsel's time. (See Dkt. 9; USEDC 2:19-cv-01902-KJM, Dkt. 7; and USEDC 2:19-cv-01896-TLN, Dkt. 8*)*

However, as Plaintiffs' Complaint clearly states, the prior cases are listed for the purpose of demonstrating Vallejo Police Department and inter alia the City of Vallejo's awareness of this pattern of its Officers' using excessive force and its ongoing failure to supervise, discipline and/or retrain the officers that engage in such conduct, as evidence of the City's deliberate indifference to its Officers' constitutionally violative conduct which is tantamount to a custom, policy or practice that is encouraged and ratified by the City. Plaintiffs agree with Judge Mendez' opinion on this identical issue and hopes the court follows suit to permit Plaintiffs' Operative Complaint to proceed on the *Monell* claim as filed.

Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' Complaint is based on the arguments made below, on the Declaration of Adante Pointer (hereinafter the "Pointer Declaration"),

3

filed herewith and all exhibits attached thereto, on the Court's file in this matter, and on such oral and/or documentary evidence presented at the hearing of this motion.

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................... 2

Introduction ..................................................................................................................... 3

Statement of Facts ........................................................................................................... 4

Argument.......................................................................................................................... 6

I. Legal Standard on Dismissal under FRCP 12(b)(6)..................................................... 7

    A. Plaintiffs Plead Facts Sufficient to Support Their Monell Claim ……………………… 8

        i. Prior Incidents are Similar to Subject Incident ………………………………….. 12

    B. Plaintiffs Acknowledge the Insufficiency of their Pleading Regarding the Chief of Police 13

    C. Court Should Permit Plaintiffs to Cure Any Deficiencies in Their Complaint…… 13

    D. Conclusion........................................................................................................ 14

# TABLE OF AUTHORITIES

**Statutes**

42 U.S.C. 1983 ………………………………………………………………………………… 8, 9

Federal Rules of Civil Procedure 12 (b)(6) …………………………………………………… 6, 7

Federal Rules of Civil Procedure 15 (a) …………………………………………………….. 13

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)…………………………………………………… 6

*Breen v City of Concord, 3:19-cv-05622, 6:3-6, Dkt #19…..…..…………………………………..* 12

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)……………………………………. 7

*Christie v. Iopa,* 176 F.3d 1231, 1238 (9th Cir.1999)………………………………………….. 9

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)……………………………………… 9

*City of Canton v. Harris*, 489 U.S. 378 (1989) ………………………………………………… 8, 9

*Estate of Duran v. Chavez*, No. 2:14-cv-02048, 2015 WL 8011685, at *9 (E.D. Cal. Dec. 7, 2015)   9

*Estate of Villarreal ex rel. Villarreal v. Cooper*, 929 F.Supp.2d 1063 (2013) ……...……………. 9

Galbraith v Cnty. Of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002)…………………………. 10

*Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992) (per curiam)………………………… 9, 11

*Gilliam v. City of Vallejo*, No. 214-cv-2217, 2016 WL 4059184 (E.D. Cal. May 27, 2016)……… 11

*Gilligan v. Jamco Dev. Corp*., 108 F.3d 246, 249 (9th Cir. 1997)………………………………. 7

*Ileto v. Glock Inc*., 349 F.3d 1191, 1199-200 (9th Cir. 2003)…………………………………….. 6

*Jackson v. Carey*, 353 F .3d 750, 755 (9th Cir. 2003)…………………………………………. 7

*Lee v. City of Los Angeles*, 250 F.3d 668 (9th Cir. 2001) …………………………………………. 9

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)…………………………………………… 13

*McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004)……………………………... 8

*Monell v. Department of Social Services*, 436 U.S. 658 (1978). ……………………………….… 8

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009)……………………………………… 7

*Phillips v. Cty. of Fresno*, No. 1:13-cv-0538, 2013 WL 6243278, at *10 (E.D. Cal. Dec. 3, 2013)…. 9

**STATEMENT OF FACTS**

On January 22, 2019, at approximately 3:00 p.m., Plaintiff, Adrian Burrell was inside of his home, on Bryon Street, in Vallejo, California. Mr. Burrell was awaiting the arrival of his cousin, Plaintiff Michael Walton.

Mr. Burrell's directed his attention to his front yard and noticed Michael Walton parked in his driveway, on a motorcycle. Mr. Burrell also noticed a police car behind Mr. Walton and walked out onto his porch to find out what was happening.

Upon exiting his home, Mr. Burrell observed a Vallejo Police Department patrol SUV parked in front of his home, on the wrong side of the street. Mr. Burrell saw a police officer (later identified as Defendant Vallejo Police Officer David McLaughlin) standing in the door jam of his patrol car, pointing a gun at Mr. Walton.

Mr. Burrell observed Mr. Walton was still wearing his helmet and was overtly unaware that Officer McLauglin was pointing a gun at him. Mr. Burrell immediately called out to Officer McLaughlin to notify him that Mr. Walton likely could not hear him due to the helmet. Officer McLaughlin aggressively told Mr. Burrell to go back into his house. At this point Mr. Burrell was standing on his porch, a minimum of 40 feet away away from Officer McLaughlin who was standing in the gutter portion of the street in front of the home.

Mr. Burrell declined to go back into the house as he was lawfully located on his own porch and maintaining an objectively safe distance from the officer. Mr. Burrell began using his cellular phone to record what he perceived to be a potentially deadly situation.

Officer McLaughlin approached the back of the motorcyle and proceeded to hold Mr. Walton at gunpoint. Mr. Walton placed his hands in the air and feared for his life while being held at gunpoint for no good reason whatsoever. Officer McLaughlin again told Mr. Burrell to get back and he again declined. At this time Mr. Burrell was located on his raised porch, approximately 33 feet

7

away from Officer McLaughlin. Officer McLaughlin again told Mr. Burrell to 'get back' although Mr. Burrell had at no point left his porch.

Officer McLaughlin proceeded to tell Mr. Burrell that he was going to handcuff and place Mr. Burrell in his patrol car. Then, Officer McLaughlin inexplicably turned away from Mr. Walton, whom he had been holding at gunpoint, holstered his gun and rushed towards the porch where Mr. Burrell was still standing, leaving Mr. Walton unattended.

Officer McLaughlin accused Mr. Burrell of interfering and grabbed at Mr. Burrell. Officer McLaughlin physcially acosted Mr. Burrell about his arms and violently threw him into the outside wall of the house, then swung him around and hit his head against the wooden pillar on the porch.

Mr. Burrell and Mr. Walton were both placed into the back of the patrol car. Mr. Burrell notified Officer McLaughlin that he had a military service related injury and asked to have his handcuffs placed in the front of his body. Officer McLaughlin declined to move the handcuffs. However, shortly after being notified of Mr. Burrell's military status, Officer McLaughlin's tone changed and he released Mr. Burrell and thanked him for his service.

A short time later, Officer McLaughlin cited Mr. Walton for allegedly speeding and released him as well. Mr. Burrell went to the emergency room for treatment for injuries to his head, arms and shoulder and was diagnosed with a concussion and other injuries.

On June 6, 2019, Mr. Burrell met with Defendant Vallejo Chief of Police Andrew Bidou. In that meeting, Chief Bidou denied that Defendant McLaughlin was a danger to the citizens of Vallejo, despite multiple lawsuits alleging excessive force and at least two unprovoked attacks on citizens which were captured on video. Upon information and belief, Plaintiffs allege that no internal affairs review of Defendant McLaughlin's off-duty behavior was initiated until after the video concerning Messrs. Burrell and Walton was released to the news.

As of November 2019, Officer McLaughlin contends that Mr. Burrell resisted arrested during the incident, despite clear evidence that Mr. Burrell was acting lawfully. Officer McLaughlin's ongoing belief that Mr. Burrell was acting unlawfully is evidence that Officer McLaughlin was not disciplined or retrained to recognize that his actions were both unlawful and in violation of his Department's policy.

In Plaintiffs' Complaint, they allege that the subject incident continues the Vallejo Police Department's long standing pattern and practice of ratifying its Officers' misconduct. (Plaintiffs' Complaint Dkt #5 ¶25-28) Plaintiff's Complaint further states Defendant City is aware of its Officers' constitutionally violative conduct yet it refuses to adequately train, supervise, discipline or retrain its officers who engage in unconstitutional policing. (Plaintiffs' Complaint Dkt #5 ¶25-28) The City's steadfast denial and/or refusal to properly train, supervise and/or discipline its Officers for using excessive force demonstrates the existence of an entrenched culture, policy or practice of promoting, tolerating and/or ratifying with deliberate indifference, the use of excessive force and the fabrication of official reports to cover up the Defendant officers's misconduct. (Plaintiffs' Complaint Dkt #5 ¶27)

To that end, Plaintiffs listed twenty-one (21) prior incidents where violations of Vallejo Police Department policy and longstanding P.O.S.T. training did not result in any manner of discipline or retraining which is similar if not identical to the allegations contained in the complaint at bar, namely that the officer who injured Plaintiff was not adequately disciplined and/or retrained. (Plaintiffs' Complaint Dkt #5 ¶27, 28, 29(a) –(w), 40, 51). The vast majority of the listed incidents have or are expected to result in significant monetary settlements or verdicts to compensate for the officers' wrongdoing, and none of which resulted in discipline or retraining to identify and correct violations of training and/or policy.

# ARGUMENT

## I. LEGAL STANDARD ON DISMISSAL UNDER F.R.C.P. 12 (b)(6)

A motion to dismiss under Federal Rule of Civil Procedure, Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-200 (9th Cir. 2003). To survive a motion to dismiss, a complaint must plead sufficient "factual matter, accepted as true" to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In assessing the sufficiency of a plaintiff's pleadings, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id*. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," and a complaint that pleads facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." Id. (internal quotations omitted).

A Rule 12(b)(6) motion to dismiss tests the formal sufficiency of the complaint. There is a strong presumption against dismissing an action for failure to state a claim. See *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). The Rule 12(b)(6) issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to offer evidence to support the claims. *Jackson v. Carey*, 353 F .3d 750, 755 (9th Cir. 2003). To sufficiently state a claim to relief and survive a Rule 12(b)(6) motion, a complaint "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009) (internal

quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990); Cook, Perkiss & Leiche, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).*

### A. PLAINTIFFS PLEAD FACTS SUFFICIENT TO SUPPORT THEIR MONELL CLAIM

A municipality is only liable for the acts of its employees through section 1983 where the plaintiff can show that a policy, custom, or practice led to the violation at issue. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). The failure to train or supervise may give rise to a "policy or custom" sufficient to impose liability on defendants. *City of Canton*, 489 U.S. at 389- 90. A municipality's failure to train its employees may create § 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact." *City of Canton*, 489 U.S. at 388; *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001). See e.g., *Estate of Villarreal ex rel. Villarreal v. Cooper*, 929 F.Supp.2d 1063, 1077 (2013).

A relaxed pleading standard may apply in limited circumstances. Allegations based on "information and belief" may be sufficient to establish a "causal connection between the existing or non-existing policies, procedures and practices and the harms [Plaintiffs] experienced" when "the facts that might demonstrate the causal connection—such as...corrective actions taken or not taken—are not available to the pleading party [before] discovery." *Phillips v. Cty. of Fresno*, No. 1:13-cv-0538, 2013 WL 6243278, at *10 (E.D. Cal. Dec. 3, 2013) (internal citations and quotation marks omitted). This is particularly true when a plaintiff raises failure to discipline or failure to train claims. See *Estate of Duran v. Chavez*, No. 2:14-cv-02048, 2015 WL 8011685, at *9 (E.D. Cal. Dec. 7, 2015) (allowing plaintiffs' failure to supervise, investigate, or discipline claim to survive defendants' motion to dismiss); *Phillips*, 2013 WL 6243278 at *10 ("find[ing] that dismissal of plaintiffs' claims for

entity/supervisor liability is inappropriate at this stage of the proceeding"). A plaintiff "may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded," *Gillette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992) (per curiam).

Isolated constitutional violations may also give rise to municipal liability where an agent of the municipal corporation possesses final policymaking authority and "ratifies" a subordinate's actions. *Christie v. Lopa,* 176 F.3d 1231, 1238 (9th Cir.1999) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)). To establish ratification, a plaintiff must prove that the authorized policymaker approved the subordinate's position and the basis for the decision. *Id.* at 1239.

"In this circuit, a claim of municipality liability under section 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom or practice." *Galbraith v Cnty. Of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002).*

Defendants claim that Plaintiffs have not presented facts sufficient to support their *Monell* claim and that Plaintiffs cannot plead prior incidents to allege a pattern and practice sufficient to support a *Monell* claim. Defendants are patently incorrect. Here, Plaintiffs listed twenty-one (21) instances of police misconduct which resulted in claims, lawsuits, jury verdicts and/or settlements arising out of the alleged use of excessive and/or unlawful deadly force. Plaintiffs further alleged the City failed to discipline or retrain any of the involved offending officers: all facts which are similar to the case at bar. Plaintiffs based the allegations contained in the Complaint on personal knowledge, information, and belief, since the vast majority of cases listed in Plaintiffs' Complaint were litigated by the Law Offices of John L. Burris and counsel maintains firsthand knowledge of the lack of discipline or retraining involved in those incidents, which also occurred in the instant case.

### i.  PRIOR INCIDENTS ARE SIMILAR TO SUBJECT INCIDENT

Plaintiffs implores this court to use a similar analysis utilized by Magistrate Judge Sally Kim where in the *Breen v. City of Concord, et al* case, she reasoned that "highly detailed allegations from factually pertinent cases presented by Plaintiff in support of his *Monell* claim are more than sufficient to survive Defendants' motion to dismiss." (See *USNDC Case No. 3:19-cv-05622-SK Dkt #19)*

Defendants claim Plaintiffs have not presented facts sufficient to support their Monell claim because Plaintiffs Operative Complaint describes 21 prior incidents of alleged misconduct which are not *identical* to the facts presented in this incident. Defendants are incorrect in their second attempt to advance this same failed argument as Plaintiffs need not present identical facts to successfully advance their *Monell claim past this 12(b)(6)* stage of attack.

Here, Plaintiffs' Operative Complaint lists 21 prior incidents which are factually pertinent in relation to the case at bar because they are all incidents of police conduct which resulted in: 1.) an alleged use of excessive force, 2.) violations of Vallejo Police Department policy, and 3.) the City not imposing any discipline and 4) City not retraining the involved Officer(s). Likewise, here in the case at bar, Plaintiffs set forth that Defendant McLaughlin violated his Department's policy and his training but nevertheless the City failed to discipline or retrain Defendant McLaughlin just like the other 21 incidents pled in Plaintiffs' operative Complaint. Plaintiffs further contend that the City's failure to discipline or retrain in this and all of the other 21 similar incidents is evidence of ratification of officer misconduct which allows rogue officers to go unchecked. All of these facts are similar to the case at bar and sufficient to permit the *Monell* claim to advance forward at this stage of litigation.

Further, Plaintiffs base the 21 allegations contained in the Operative Complaint on personal knowledge, information, and belief, since the vast majority of cases listed in Plaintiffs' Complaint

13

were litigated by the Law Offices of John L. Burris and counsel maintains firsthand knowledge of the lack of discipline or retraining involved in those incidents, which also occurred in the present case.

Moreover, Plaintiffs' Complaint specifically describes an incident involving Mr. Santiago Hutchins, who ultimately filed suit against Defendant McLaughlin for an incident where Defendant McLaughlin engaged in an outrageous and unreasonable outpouring of gratuitous violence and rage against him and just like in the case at bar, Defendant McLaughlin was not disciplined or retrained.

Plaintiffs did not just list cases wherein officers who are named Defendants in the instant litigation have been named Defendants in other litigation. Instead, Plaintiffs painstakingly listed a litany of other instances wherein citizens have filed government tort claims and/or lawsuits identifying other Vallejo Police Officers, who similar to the Defendant McLaughlin, have used excessive force under dubious circumstances and those Officers, like the one named here, were not properly disciplined or retrained. For example, in one egregious example, Officer Sean Kenney shot and killed 3 different unarmed men, in 3 separate incidents over a five months period of time but was never disciplined, retrained, debriefed or removed from duty. Incredibly, after the third shooting death he was allowed to voluntarily quit his job and was later rehired as a homicide detective of all things. (Plaintiffs' Complaint Dkt #5 ¶ 29(a-c)).

Every such failure to discipline or retrain officers for overt policy and training violations acts to ratify Vallejo Police Officers' conduct and continues to place citizens at risk of harm. Plaintiffs anticipate presenting statistical analysis that places Vallejo Police Department's use of force among the highest, per capita, in the country. In fact, Plaintiffs are seeking federal oversight of the Vallejo Police Department as part of their prayer for relief and believe each of the 21 outrageous, undisciplined incidents demonstrates the need for such oversight!

Further, the City's failure to discipline or retrain Defendant Officers for failure to follow their own explicit policy as evidenced by multiple prior incidents, is sufficient to support Plaintiffs' *Monell*

claim based upon the Fourth Amendment violation. In addition, the City's failure to discipline or retrain serves as ratification of Defendants' policy violations and unlawful conduct. As such, Defendants' Motion to Dismiss must be denied.

### B. **PLAINTIFFS ACKNOWLEDGE THE INSUFFICIENCY OF THEIR PLEADING REGARDING THE CAPACITY OF DEFENDANTS BIDOU AND MCCLAUGHLIN**

Defendants raised the issue that Defendants Bidou and McLaughlin are erroneously identified in their official capacities.

The parties met and conferred on this issue and Plaintiffs agreed to Amend their Operative Complaint to correct these insufficiencies. Plaintiffs acknowledge that they improperly listed Defendant Bidou in his official capacity, as opposed to his rightful individual capacity. Also, Plaintiff inadvertently listed Defendant McLaughlin in his individual and official capacity and agree that he should only be listed in his individual capacity.

Since Defendants claim no prejudice from this error, Plaintiffs request leave to amend their Complaint to list Defendants Bidou and McLaughlin only in their individual capacities.

### C. **COURT SHOULD PERMIT PLAINTIFFS TO CURE ANY DEFICIENCIES IN THEIR COMPLAINT**

Should the Court determine that the Complaint is defective, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir.2000) (en banc) (internal quotation marks and alterations omitted). Given the wealth of information pled concerning the City's pattern and practice of permitting its Officers to remain inadequately trained and supervised so that its Officers engage in the rampant use

of excessive force, Plaintiffs should be granted leave to cure any defects concerning their *Monell* cause of action.

D. **CONCLUSION**

Plaintiffs pled several paragraphs of specific, detailed factual allegations that the City engages in a custom, policy or practice of excessive force, that it refuses to adequately train its officers in how to properly use force and/or discipline its officers who engage in constitutionally violative conduct and conduct which violates their explicit policies, and thereafter ratifies such misconduct. In addition, Plaintiffs made specific allegations of prior, undisciplined wrongdoing against Defendant. Plaintiffs complaint also cites multiple court cases involving allegations of the unlawful use of unlawful and excessive force similar to those presented here. For the reasons illustrated above, Plaintiffs pray the court deny Defendants' Motion to Dismiss portions of Plaintiffs' Monell claim and respectfully requests leave to amend their Complaint to identify Defendants Bidou in his individual capacity.

Respectfully submitted,

**LAW OFFFICES OF JOHN L. BURRIS**

Date: March 23, 2020          /S/ *Adante D. Pointer*
                              ADANTE D. POINTER
                              MELISSA C. NOLD
                              COUNSEL FOR PLAINTIFFS