UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN BURRELL,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF VALLEJO, et al.,<br><br>    Defendants. | No. 2:19–cv–1898–WBS–KJN<br><br>ORDER ON MOTION TO COMPEL<br><br>(ECF No. 52) |

        Presently before the court[1] is plaintiff Adrian Burrell's motion to compel from defendants further responses to certain requests for production of documents, requests for admission, and special interrogatories. (ECF No. 52.) The parties filed a joint statement regarding the discovery disagreement, along with supporting exhibits. (ECF Nos. 57-57.5.) The court heard remote arguments on the motion on June 24, 2021. Adanté Pointer, Patrick Buelna, and Angel Alexander appeared for plaintiff; and John Robinson and Katelyn Knight appeared for defendants. For the following reasons, the court GRANTS IN PART and DENIES IN PART plaintiff's motion.

///

///

///

---

[1] This matter was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(1) and 28 U.S.C. § 636(b)(1).

1

## BACKGROUND

### A. The Underlying Action

This discovery dispute arises in plaintiff's 42 U.S.C. § 1983 excessive force case against the City of Vallejo and members of the Vallejo Police Department ("VPD"). Originally filed in September 2019, the case is proceeding on plaintiff Burrell's claims contained in the Third Amended Complaint ("TAC"). (ECF No. 40.)

As alleged in the TAC, on the afternoon of January 22, 2019, plaintiff Burrell was at his home waiting for his cousin, Michael Walton, to arrive.[2] (TAC ¶¶ 1, 13.) Walton pulled into Burrell's driveway on a motorcycle with a police car behind him. Burrell saw VPD Officer David McLaughlin, one of the defendants in this case, standing next to the patrol car pointing his gun at Walton. (TAC ¶¶ 14-16.) Because Walton, who was still wearing his helmet, seemed unaware that McLaughlin was pointing a gun at him, Burrell called out to Officer McLaughlin from the porch of his house. (TAC ¶ 16.) Officer McLaughlin ordered Burrell to go back into his house, but Burrell remained on his porch some 33 feet away from McLaughlin and began to record the encounter with his cell phone.[3] (TAC ¶¶ 2, 16-18.) While continuing to tell Burrell to go inside, Officer McLaughlin approached Walton with gun drawn; then he turned away from Walton, holstered his gun, and rushed toward Burrell on the porch. (TAC ¶¶ 18-19.) Accusing Burrell of interfering with the stop, Officer McLaughlin grabbed Burrell and threw him into the wall of the house and then hit Burrell's head against a wooden pillar on the porch. (TAC ¶ 20.) Burrell and Walton were both handcuffed and placed in the back of the patrol car, but Officer McLaughlin eventually released them after giving Walton a speeding citation. (TAC ¶¶ 21-22.) Officer McLaughlin did not write a police report documenting the incident which left Burrell with a diagnosed concussion, among other injuries. (TAC ¶¶ 2, 23.)

///

---

[2] Walton was originally a second plaintiff in this case, but he voluntarily dismissed his claims on June 4, 2021. (ECF Nos. 54-55.) This order therefore refers only to plaintiff Burrell in describing the procedural history.

[3] According to the Joint Statement, Officer McLaughlin's body-worn camera was also recording the encounter. (ECF No. 57 at 12.)

Plaintiff alleges that several months prior, in August 2018, Officer McLaughlin also unlawfully attacked another individual while holding him at gunpoint. (TAC ¶ 26.) And on information and belief, VPD Chief of Police Andrew Bidou (another defendant in this case) was aware of both McLaughlin incidents but failed to discipline McLaughlin for the Burrell incident, until Burrell's video footage was released online—and never disciplined McLaughlin for the August 2018 incident. (TAC ¶¶ 2, 24, 26.) Plaintiff alleges that Chief Bidou's failure to terminate or otherwise discipline McLaughlin for the 2018 incident directly caused his injuries. (TAC ¶ 26.)

As relevant to this dispute, the operative TAC asserts several § 1983 causes of action, including Fourth Amendment claims of excessive force and unlawful seizure against Officer McLaughlin and a Monell claim against the City, Chief Bidou, and 25 Doe defendants. (TAC at 17-21.) For the Monell claim, plaintiff alleges that, "as a matter of official policy—rooted in an entrenched posture of deliberate indifference to . . . constitutional rights"— the City "has allowed persons to be abused by its Police Officer[s]." (TAC ¶ 28.) He claims that the VPD "exhibits a pattern and practice of using excessive force and misconduct against citizens and despite these incidents, none of the Officers are ever found in violation of department policy or disciplined, even under the most questionable of circumstances." (TAC ¶ 29.) Plaintiff specifically describes 21 prior incidents of alleged excessive force by members of the VPD where no discipline or retraining took place afterward. (TAC ¶¶ 26, 29(a)-(t).) Of these 21 incidents alleged, 6 were fatal VPD officer-involved shootings (TAC ¶¶ 29(a)-(d), (j), (o)); 2 were incidents where a VPD officer drew his firearm but did not fire the weapon (TAC ¶¶ 26, 29(t)); 2 were non-shooting arrests of persons experiencing mental health episodes (TAC ¶¶ 29(e), (m)); and the other 11 were non-shooting arrests with no firearms drawn (TAC ¶¶ 29(f)-(i), (k)-(l), (n), (p)-(s)).[4]

---

[4] Defendants moved to dismiss or strike all but 4 of the subparagraphs describing these incidents (as identically alleged in the First Amended Complaint), arguing that they involved dissimilar factual circumstances irrelevant to the present Monell claim. (ECF No. 14 at 4, 7.) The court denied that motion, finding no prejudice to defendants from retaining the full allegations. (ECF No. 19.) The court also permitted plaintiffs to further amend the complaint to remove all claims against the individual defendants in their official capacities. (Id.)

The court approved the parties' stipulated protective order in August 2020. (ECF No. 28.) As discovery proceeded, plaintiff filed the unopposed TAC on March 3, 2021, with the court's permission. (ECF Nos. 37, 40.)

On April 6, 2021, plaintiff moved for leave to amend again, attaching a proposed Fourth Amended Complaint ("Proposed 4AC"), which ultimately was never filed. (ECF Nos. 44, 44.2.) Unlike the prior complaints, the Proposed 4AC alleged the existence within the VPD of a "vigilante police gang" known as the "Badge of Honor" gang—as purportedly revealed by the allegations of a recent whistleblower lawsuit filed by former VPD Captain John Whitney in state court. (ECF No. 44.2 ¶ 30; see John Whitney v. The City of Vallejo, et al., No. FCS055842 (Cal. Super. Ct. Solano Cty., complaint filed Dec. 22, 2020).) The Proposed 4AC alleged that the gang rewarded officers for shooting and killing citizens, commemorating each killing by bending one point on the officer's police badge for each fatality; and that members in the gang were promoted within the VPD and protected from internal affairs investigations and discipline. (ECF No. 44.2 ¶¶ 31-32.) Further, it alleged, defendant McLaughlin was a member of the gang, sporting two badge bends before the Walton/Burrell incident; that he was "incentivized to draw his firearm and threatened to shoot Plaintiff Walton to acquire another bend in his badge"; and that he used excessive force against plaintiff Burrell in retaliation for interrupting that effort. (Id. ¶¶ 33, 45-46.)

After a hearing on May 17, 2021, the assigned District Judge ordered plaintiff to decide by June 1, 2021, whether to file the Proposed 4AC and accept the costs of additional discovery as a sanction, or to proceed with the TAC. (ECF No. 50.) Plaintiff ultimately elected not to file the Proposed 4AC, so the case proceeds on the TAC. On June 3, 2021, plaintiff filed the motion to compel that is now before the court. (ECF No. 52.)

**B. The Discovery Dispute**

Plaintiff moves to compel from defendants further responses to the following discovery requests, under Federal Rule of Civil Procedure 37:

    a) Requests for Production ("RFPs") Nos. 1-10

    b) Special Interrogatories 9 & 11, and

4

c) Requests for Admission ("RFAs") Nos. 1-76.

All three sets of disputed requests concern the proper scope of discovery for plaintiff's Fourth Amendment and Monell claims and certain privileges asserted by defendants. (ECF No. 57 (Joint Statement) at 2.) The scope of discovery issues relate to whether and to what extent plaintiff can obtain two categories of discovery: (1) department-wide VPD use-of-force incidents and investigations, and (2) the existence of badge bending or a "Badge of Honor" gang within the VPD.

**DISCUSSION**

    **A. Legal Standard**

The scope of discovery under Federal Rule of Civil Procedure 26(b)(1) is broad. Discovery may be obtained as to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[5] Fed. R. Civ. P. 26(b)(1). "The relevance standard is extremely broad, especially in civil rights excessive force cases." James v. Hayward Police Dep't, 2017 WL 2437346, * 1 (N.D. Cal. Feb. 27, 2017) (citing Soto v. City of Concord, 162 F.R.D. 603, 610 (N.D. Cal. 1995)). The court, however, may limit discovery if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;" or if the party who seeks discovery "has had ample opportunity to obtain the information by discovery;" or if "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

    "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1)." Bryant v. Ochoa, 2009 WL 1390794 at *1 (S.D. Cal. May 14, 2009) (citations omitted). "Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." Id.

////

---

[5] Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

5

**B. Analysis**

The parties raise the same objections and arguments regarding most of the disputed requests. The court therefore addresses the disputed requests by the two general categories of information sought.

### 1. Requests Related to VPD Use-of-Force Incidents (RFPs 2, 10 & All RFAs)

The broadest category of discovery plaintiff seeks is for documents and admissions related to department-wide uses of force by VPD officers and the VPD's investigations of those incidents. RFP Nos. 2 and 10 fall into this category, along with all of the disputed RFAs.

a. RFP No. 2

RFP No. 2 requests "all documents that pertain to tracking, documenting and/or evaluating Vallejo police officers using force, excessive force and/or discharging their firearm from January 1, 2010, to the date of production."[6] (ECF No. 57.1 at 2-3.) In the Joint Statement, defendants argue that the request (1) seeks documents that are irrelevant and not proportional to the needs of the case, (2) implicates the privacy rights of non-parties, and (3) would be unduly burdensome to satisfy. (JS at 17-18.)

i. *Relevance/Proportionality/Overbreadth*

Defendants' principal objection to all of the discovery at issue is that it is irrelevant and disproportional because it extends to all types of uses of force, including deadly force, even though this case does not involve a use of deadly force. (JS at 6.) Although the court agrees that certain requests, like RFP No. 2, are overbroad as originally propounded, the court does not agree that all requests related to uses of deadly force are irrelevant in this case simply because no one died in the underlying encounter. Lost in much of defendants' arguments is the allegation that Officer McLaughlin had his firearm drawn and pointed at Mr. Walton from the beginning of the encounter. (TAC ¶¶ 15, 18.) There is no allegation that McLaughlin ever aimed the gun at plaintiff Burrell, or threatened *him* with deadly force; indeed, the TAC specifically alleges that McLaughlin "holstered his gun" when rushing at plaintiff. (Id. ¶ 19.) Even so, the presence of a

---

[6] Capitalization is normalized to sentence case for all quoted discovery requests.

gun aimed at his cousin allegedly motivated plaintiff to begin recording "what he perceived to be a potentially deadly situation." (Id. ¶ 17.) Plaintiff's recording then allegedly provoked McLaughlin to seize plaintiff, in a continuing display of ostensibly excessive force.[7] Thus, the centrality of the firearm in the encounter, as alleged in the TAC, makes this case involving a threatened use of lethal force arguably similar to incidents involving actually lethal uses of force. The allegation that plaintiff successfully interrupted a potentially lethal use of force does not preclude him from seeking discovery regarding other incidents where that force was not interrupted.

This case is distinct from cases like Cathey v. City of Vallejo, No. 2:14-CV-01749-JAM-AC, 2015 WL 5734858, at *5 (E.D. Cal. Sept. 29, 2015), where the court found documents related to the use of lethal force irrelevant to plaintiff's claims of excessive force arising from overly tight handcuffs. There was not even the suggestion of lethal force in that case. See Smith v. City of Hemet, 394 F.3d 689, 706 (9th Cir. 2005) (defining lethal force as force that creates a substantial risk of causing death or serious bodily injury). The same distinction applies to Gonzales v. City of Bakersfield, No. 1:16-CV-00107 JLT, 2016 WL 4474600 (E.D. Cal. Aug. 25, 2016), cited by defendants. In that case, plaintiff was pushed onto his stomach while being handcuffed, and the plaintiff "[did] not claim that during the incident . . . any officer used any weapon." Id. at *1.

By contrast, here, it is plausible that a City policy of indifference toward the VPD's alleged pattern of failing to discipline its officers for excessive use of deadly force could be a "moving force" behind Officer McLaughlin's alleged treatment of a citizen trying to (passively) avert another use of that level of force. See Monell v. Dep't of Soc. Serv., 436 U.S. 658, 694 (1978) (allowing for claims arising from policies and practices that are the "moving force behind the constitutional violations" alleged).

Although the court rejects defendants' lethal vs. non-lethal force distinction, RFP No. 2 as

---

[7] The allegation that Officer McLaughlin turned away from Mr. Walton, leaving him unattended while he rushed at plaintiff Burrell (TAC ¶ 19), reinforces plaintiff's theory that there was no need for Officer McLaughlin to have started the traffic stop with his gun aimed at Mr. Walton.

7

written is overly broad in other respects. There is no need to obtain documents regarding *every* VPD use of force or discharge of a firearm in the past 11 years. (See ECF No. 57.1 at 3 (RFP No. 2), requesting documents related to officers "using force, excessive force and/or discharging their firearm from January 1, 2010, to the date of production".) At the hearing, however, plaintiff's counsel clarified that at present, plaintiff is only seeking documents connected to the 21 prior VPD excessive force incidents alleged in the TAC. The court finds such documents relevant and proportional to the needs of this case.[8] The court overrules defendant's objection to producing documents from the subset of the 21 incidents involving lethal use of force or mental health factors.[9]

### ii. Privacy

Defendants make a barely defined argument that the court should deny discovery into deadly force cases involving non-defendants because of "the privacy interests at stake." (JS at 17.) Defendants' minimal argument does not meet their burden of supporting their privacy objection. See Ochoa, 2009 WL 1390794 at *1. However, their concern is easy to appreciate, and easily addressed. First, the privacy of the VPD officers involved in the 21 incidents is already ensured by the existing protective order in place in this case (ECF No. 28). See Doe v. Gill, 2012 WL 1038655, at *4 (N.D. Cal. Mar. 27, 2012) ("officers' privacy concerns may be sufficiently protected with the use of a 'tightly drawn' protective order"). Second, the names of the persons making the claims of excessive force, or other non-officer witnesses to the incidents, may be redacted. The court sees no need for plaintiff to know the identity of the complainants or

---

[8] Should plaintiff later seek the broader discovery as originally phrased, the court likely would limit the request to documents pertaining to evaluating Vallejo police officers' use of force where there has been a complaint that the force used was excessive. See Cooley v. City of Vallejo, 2013 U.S. Dist. LEXIS 155175, at *11 (E.D. Cal. Oct. 29, 2013) ("Discoverability turns on the existence of a question regarding the reasonableness of the force used by the defendants, not on the type of force used."); id. at *11-12 (in case not involving use of deadly force, allowing discovery into incidents involving use of deadly force only where "incidents gave rise to complaints that the force used was excessive").

[9] "To the extent that any other excessive force incidents are so factually distinguishable as to have little probative value regarding plaintiff's claims, defendants may certainly object to their use at trial." Cooley, 2013 U.S. Dist. LEXIS 155175, at *10.

witnesses in order to support his Monell claim. See Gonzales, 2016 WL 4474600, at *8.

                iii.      *Undue Burden*

Defendants argue, lastly, that it would be unduly burdensome and time-consuming for the VPD—and its one internal affairs analyst—to produce the wide range of documents potentially contemplated by plaintiff's request as worded. As limited to the 21 incidents alleged in the TAC, however, RFP No. 2 does not present an undue burden.[10]

                b.   RFP No. 10

RFP No. 10 uses similarly broad language, requesting "all use of force reporting forms prepared by Vallejo Police Officers for the time period five years prior to the incident up and until the date of production." (ECF No. 57.1 at 11.) Defendants assert the same arguments against this request as asserted for RFP No. 2, with the addition of a vagueness objection. (JS at 24.) At the hearing (as with RFP No. 2), plaintiff clarified that he currently only seeks these use of force forms from the 21 prior VPD excessive force incidents alleged in the TAC.

With that limitation, the court overrules defendants' relevance, privacy, and undue burden objections to RFP No. 10 for the same reasons discussed for RFP No. 2. As to the vagueness challenge, the court trusts that the parties can come to an agreement on the meaning of "use of force reporting forms." The court notes that defendants themselves use the term "use of force form" throughout their responses to the Requests for Admission.

                c.   RFAs

The last set of requests falling in this first category of discovery are the 76 disputed Requests for Admissions. These 76 RFAs repeat the same four requests with respect to 19 separate incidents involving VPD officers—all but three of which overlap with the 21 incidents alleged in the TAC. The parties treat the first four RFAs as representative for purposes of this dispute. (JS at 25 n.9.) RFA Nos. 1 & 2 ask for admissions that "an internal affairs investigation" pertaining to the officer-involved shooting of Mr. Ronell Foster (1) did not *begin*

---

[10] Defendants originally objected to RFP Nos. 2 & 10 on the basis of the qualified official information privilege as well, but they do not raise that privilege in connection with these RFPs in the Joint Statement.

9

within a year of the incident, and (2) was not *completed* within a year of the incident. (ECF No. 57.4 at 4-5 (emphasis added).) RFA Nos. 3 & 4 ask for the same admissions with respect to "a compliance investigation" into the Foster shooting. (Id. at 6-7.) The remaining disputed RFAs repeat these same requests, rotating through each of the 19 citizens involved in the incidents in question.

RFA Nos. 1-4 are not entirely representative, because the RFAs request admissions related to different types of incidents—not all shooting incidents like Foster—and defendants already answered certain sets of them. RFA Nos. 1-32 relate to officer-involved shooting incidents, and defendants refused to respond to these requests, in part because there was no shooting in this case. (Id. at 4-35.) RFA Nos. 33-40 relate to incidents where a VPD officer drew their firearm but did not shoot, including the August 2018 incident involving defendant McLaughlin; and defendants substantively denied these RFAs, providing the dates that the "use of force forms" were completed and the dates that the "use of force reviews" were completed. (Id. at 36-41; see TAC ¶¶ 26, 29(t).) For RFA Nos. 45-48 and 73-76, defendants refused to respond, in part because both involved a "mental health/crisis intervention," unlike this case. (Id. at 44-47, 62-66.) Defendants substantively responded to all of the other disputed RFAs (Nos. 41-44 and 49-72),[11] while preserving certain objections.

With respect to the unanswered RFAs (related to 10 of the 19 incidents inquired about), defendants argue (1) that they are not relevant or proportional to this case because they pertain to deadly force and mental health encounters, unlike the present case, and (2) that each of the requests regarding the timing of a "compliance investigation" is vague for failure to define that term. (JS at 25-26.)

For the same reason that the undersigned rejected defendants' deadly vs. non-deadly force arguments in RFP Nos. 2 & 10, the undersigned rejects that proffered distinction here, too. Again, determining the VPD's willingness to timely investigate deadly uses of force by its officers is relevant to plaintiff's Monell claim that a lack of discipline or retraining contributed to

---

[11] Defendants requested additional time to confirm certain facts before answering RFA No. 65.

Officer McLaughlin beginning the alleged traffic stop with his service weapon aimed at plaintiff's cousin without obvious provocation. In addition, 5 of the 8 deadly incidents requested in the RFAs are also described in the TAC as examples of the VPD's pattern of non-responsiveness to officers using excessive force. This allegation further reinforces the relevance of the deadly-force-related RFAs to plaintiff's Monell claim.

The court also rejects defendants' reason for not answering the two sets of RFAs about incidents with citizens experiencing mental health crises (RFA Nos. 45-48 and 73-76). This relevance objection relies on an overly fine factual distinction, when plaintiff's Monell claim rests on a general lack of VPD oversight and discipline following excessive uses of force. Accordingly, the court overrules defendants' objections to answering the disputed RFAs on grounds that the inquired-about incidents involved deadly uses of force or mental health factors.

As to the vagueness objection to the RFAs that inquire about "compliance investigations," the court also trusts that the parties can come to an agreement on the meaning of that term. If further guidance is needed, the parties may contact the courtroom deputy to request a supplemental ruling.

### 2. *Requests Related to Badge Bending (RFPs 1, 3-9 & Special Interrogatories)*

The second category of disputed discovery pertains to the "badge bending" practice allegedly occurring within the VPD by members of the alleged police gang. The operative TAC contains no allegations of badge bending or a "Badge of Honor" gang, as those assertions only ever appeared in the Proposed 4AC on which plaintiff elected not to proceed. Defendants rest heavily on plaintiff's decision not to proceed with the Proposed 4AC, arguing that without any mention of badge bending in the TAC, this category of discovery is irrelevant and not proportional because this case does not involve the "shooting and killing" of citizens that the gang allegedly rewarded. The court finds that plaintiff is entitled to some discovery related to badge bending—even without specific allegations regarding that practice in the operative complaint—but that full production of all communications regarding badge bending is not presently warranted.

///

a. RFP No. 1

RFP No. 1 seeks internal documents from the VPD's termination of former Captain John Whitney, who filed the recent state court "whistleblower" suit that includes allegations of badge bending by VPD officers. Specifically, RFP No. 1 requests "all documents that pertain to John Whitney's termination (including but not limited to: any notice of termination, notice of discipline, investigative reports, hearing notices, hearing transcripts, administrative determination(s) and/or investigations)." (ECF No. 57.1 at 2.) In the Joint Statement, defendants argue that (1) the request seeks documents that are irrelevant and not proportional to the needs of the case, and (2) that disclosure would "infringe the privacy rights of Whitney, and possibly others." (JS at 12-13.)

i. *Relevance/Proportionality*

Plaintiff's main arguments for the relevance of Whitney's termination documents and the other requests regarding badge bending are that (1) as to his Monell claim, an overall culture of excessive force without review or discipline contributed to McLaughlin's aggressiveness in this instance, and (2) as to his constitutional claims, the requested documents are likely to yield admissible motive evidence that McLaughlin (a) wanted to shoot and kill Walton to gain another badge bend and (b) lashed out at Burrell for interrupting that plan. (JS at 8-11.)

After independently reviewing the Whitney complaint, the court finds that RFP No. 1 is not presently relevant or proportional to the needs of this case. See Whitney v. City of Vallejo, et al., No. FCS055842 (Cal. Super. Ct. Solano Cty., complaint filed Dec. 22, 2020).) Former Captain Whitney alleged that he was terminated in retaliation for reporting numerous types of wrongdoing within the VPD, including two paragraphs about discovering bent badges and what he viewed as Chief Bidou's and the City's inadequate response to it. (Whitney complaint ¶¶ 28-29.) Whitney's complaint does not mention a "Badge of Honor" gang, or any sort of "gang" whatsoever within the VPD. Whitney does allege that he collected 10 bent badges from VPD officers and that Chief Bidou ordered the badges returned to the officers, who were instructed to fix them—and that no investigation of badge bending was initiated despite Whitney's reports to

////

the City Manager, the Mayor, and the City Attorney.[12] (Whitney complaint ¶ 29.)

The connection between Whitney's termination and McLaughlin's actions on January 22, 2019, is far too attenuated to compel production of the wide range of documents sought in RFP No. 1. The court cannot see how documents associated with Whitney's termination would lead to evidence of defendant McLaughlin's "membership in a violent, [rogue] police gang" (JS at 11) when Whitney did not even allege the existence of such a gang.

To the extent plaintiff seeks this wide-ranging termination documentation to support his theory of an overall culture of not responding to (or, indeed, covering up) excessive force incidents, the court finds that other sources of discovery (described above) are available. Accordingly, the court sustains defendants' relevance and proportionality objection to RFP No. 1.[13]

b. RFP Nos. 3-9

RFP Nos. 3-9 all request production of documents related to "police badge bending" or "Vallejo police badges":

- RFP No. 3 requests all documents pertaining to "investigation(s) into police badge bending by any City of Vallejo Police Officer(s)."
- RFP No. 4 requests all documents "prepared by or sent to the Solano County District Attorney's Office pertaining to the bending of City of Vallejo police badges."
- RFP Nos. 5-9 request all documents "prepared by or sent to" five individuals "regarding [or pertaining to] Vallejo police badges."[14] The five are Chief Bidou, former Captain Whitney, Mayor Robert Sampayan, City Attorney Claudia Quintana,

---

[12] In a declaration attached to the Joint Statement, private investigator Robert Giordano avers that he was hired by the City in August 2020 (several months before the Whitney complaint was filed) to investigate allegations of badge bending within the VPD. (ECF No. 57.2 ¶ 3.)

[13] Because the court finds RFP No. 1 not relevant or proportional, there is no need to address defendants' (again, rather meager) assertion of Captain Whitney's privacy rights—or plaintiff's challenge to their ability to do so on behalf of a non-client.

[14] The court notes that RFP Nos. 5-9 might be unintentionally phrased too broadly, in that they are not limited to documents regarding the "bending" of VPD police badges, like RFP Nos. 3-4.

13

and City Manager Greg Nyhoff. (ECF No. 57.1 at 5-10.)  In the Joint Statement, defendants argue that these requests (1) seek documents that are irrelevant and not proportional to the needs of the case, and (2) that the requested documents are protected under the "Official Information Privilege."  (JS at 20.)  The court finds that defendants inadequately invoked the qualified official information privilege, but that—with the current lack of connection between Officer McLaughlin and an alleged badge-bending gang—the documents requested in RFP Nos. 3-9 (with one specific exception within RFP No. 3) are not currently relevant or proportional to the needs of this case.  Nonetheless, plaintiff is entitled to some discovery into VPD badge bending to see if any connection can be made.

According to defendants, an internal investigation of badge bending within the VPD began in August 2020 and is still ongoing.  Defendants provide an affidavit from private investigator Robert Giordano—a retired law enforcement officer who now conducts police misconduct and personnel investigations for public entities—who was hired by the City to serve as "the lead investigator of a confidential personnel investigation regarding allegations of 'badge bending' in the City's police department."  (ECF No. 57.2 ¶¶ 1-3.)  Giordano avers that the agency-wide investigation is ongoing and facts are still being collected; that at least "a dozen" witnesses are still to be interviewed or re-interviewed; and no conclusion or evaluations have been made to date.  (Id. ¶¶ 4-5.)

Without knowing what the universe of documents related to this badge-bending investigation is, neither plaintiff nor the court can predict how much production of those documents is appropriate.  Therefore, as discussed at the hearing, defendants must produce for plaintiff a privilege log summarizing the interviews already conducted and the documents already created in the course of the investigation(s) into VPD badge bending, including any documents preceding Mr. Giordano's hiring.  The privilege log need not include detailed page-by-page descriptions, but it must at least (A) list the officers interviewed, (B) identify any investigatory reports or administrative reviews of officers for badge bending, and (C) indicate who sent and received any communications regarding those reports/reviews.  In addition, defendants must

provide to plaintiff the names of all VPD officers from whom bent badges were allegedly collected (presumably at least 10 names, as alleged in the Whitney complaint).

Lastly, formal production is warranted now for one specific subset of documents sought in RFP No. 3 (seeking all documents related to investigations into VPD badge bending). If Officer McLaughlin was interviewed as part of the badge-bending investigation, defendants must produce whatever records exist of that interview (such as any recording, transcript, or notes from the interview). These documents are relevant and proportional to establishing Officer McLaughlin's potential motivation during the underlying incident, and defendants do not adequately invoke the qualified official information privilege to prevent disclosure.[15]

The Giordano affidavit is the only document provided in support of the qualified official information privilege. However, this affidavit is insufficient to claim the privilege because it does not come from a governmental source. See United States v. Reynolds, 345 U.S. 1, 7 (1953) (this privilege "belongs to the Government and must be asserted by it"); id. at 7-8 ("There must be formal claim of privilege, lodged *by the head of the department which has control over the matter*, after actual personal consideration by that officer." (emphasis added) (footnotes omitted)); Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995) (party raising this privilege objection must first make a "substantial threshold showing," in the form of "a declaration or affidavit *from a responsible official* with personal knowledge of the matters to be attested to in the affidavit" (emphasis added)). Nor does Mr. Giordano's affidavit explain "how disclosure *subject to a carefully crafted protective order* [already in place in this case] would create a substantial risk of harm to significant governmental or privacy interests." Soto, 162 F.R.D. at 613 (emphasis added).

Accordingly, the court orders these McLaughlin-specific badge-bending investigation documents produced in response to RFP No. 3, subject to the terms of the protective order. If none exist, defendants shall provide a verified response so stating, and indicating whether any

---

[15] If defendants wish to invoke any other privileges that could prevent or limit disclosure of these records, the court will consider those arguments but is strongly inclined to maintain this order for production.

interview of Officer McLaughlin is planned in the future. As discussed at the hearing, defense counsel should also determine whether Chief Bidou was interviewed as part of the badge-bending investigation, and if so, should endeavor to produce the same types of records of that interview. However, the court does not formally compel such production, which may be sought via informal discovery conference with the undersigned, if necessary.

Should ongoing discovery in this case substantiate plaintiff's theory that the underlying incident was connected to badge bending within the VPD, plaintiff may renew the motion to compel the requested communications regarding badge-bending (if no agreement can be reached first with defendants).

### c. Special Interrogatories Nos. 9 & 11

The final two discovery requests at issue are Special Interrogatories Nos. 9 and 11, propounded on Officer McLaughlin.

- Special Interrogatory No. 9 asks: "In the five years prior to the incident, during [ ] the incident and up to the current date of your response, have you ever bent and/or altered your law enforcement badge? (a) If yes, when did you bend and/or alter your badge? (b) If yes, why did you bend and/or alter your badge?"
- Special Interrogatory No. 11 asks: "Have you ever had your Vallejo Police Department badge repaired? (a) If yes, please explain why did you have your badge repaired? (b) If yes, please identify the company and/or person who repaired your badge(s)."

(ECF No. 57.3.)

In the Joint Statement, as to these interrogatories, the parties "reassert their position[s] from [RFP] No. 1-3." (JS at 25.) The only cognizable objection defendant McLaughlin raised in his response to the interrogatories was the same relevance/proportionality deadly vs. non-deadly force argument raised throughout—and repeatedly rejected here. It is unclear how some of the other objections asserted in RFP Nos. 1, 2, and 3 would apply to these interrogatories. For instance, these tailored interrogatories do not appear unduly burdensome or overbroad. To the extent defendants attempt to assert a privacy or official information privilege, the court overrules

those objections for the reasons discussed above—especially given that Officer McLaughlin is a named defendant (with respect to any privacy claim).

The answers to these interrogatories will help plaintiff establish whether there is any connection between Officer McLaughlin and the alleged badge-bending that might be part of the VPD's alleged indifference to officers' excessive use of force. Accordingly, the court overrules defendants' objections to Special Interrogatories Nos. 9 and 11.

**CONCLUSION**

Accordingly, IT IS ORDERED that:

1. Plaintiff's motion to compel (ECF No. 52) is GRANTED IN PART and DENIED IN PART;

   a. The motion is denied with respect to RFP No. 1, and denied without prejudice with respect to RFP Nos. 3-9 (except regarding the interviews of Officer McLaughlin as detailed below);

   b. The motion is otherwise granted as follows:

      i. Within **21 days** of the entry of this order, defendants shall:

         1. With respect to RFP Nos. 2 & 10, produce all documents related to complaints of excessive force in the 21 incidents alleged in the Third Amended Complaint (including use-of-force complaints, underlying incident evidence such as reports or recordings, and any administrative review or investigation documents). *The names of all persons other than the officers involved in the 21 incidents shall be redacted*;

         2. Answer all unanswered Requests for Admission in RFA Nos. 1-76; and

         3. Answer Special Interrogatories Nos. 9 and 11.

///

///

///

ii. Within **30 days** of the entry of this order, defendants shall:

    1. With respect to RFP No. 3, produce all records of any badge-bending interview conducted with Officer McLaughlin, as described in this order;

    2. Provide to plaintiff the names of all officers of the Vallejo Police Department from whom bent police badges were collected; and

    3. Provide to plaintiff, as described in this order, a privilege log of the ongoing badge-bending investigation.

IT IS SO ORDERED.

Dated: June 29, 2021

*/s/ Kendall J. Newman*
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

burr.1898